MOWERY *v.* HOUSE.

5-2595                                          355 S. W. 2d 275

Opinion delivered March 26, 1962.

*Mehaffy, Smith & Williams,* by *William H. Sutton,* for appellant.

*Virgil D. Willis,* for appellee.

ED. F. McFADDIN, Associate Justice.   Questions of usury and damages are presented on this appeal. Delbert House purchased a motor truck from Mowery-Gaskill Motor Company (hereinafter called "Mowery") on a

deferred payment title retaining contract. When House failed to make the payments, Mowery filed this action for the balance claimed due and also had the truck attached (§ 34-2301 Ark. Stats.). House claimed the contract of sale was usurious, and cross complained for damages. Trial to a jury resulted in a verdict and judgment for House for $1,200.00 damages. From such judgment Mowery brings this appeal, listing seven points. We find it unnecessary to separately discuss each of the points: rather, we group them into convenient topic headings.

I. *The Issue Of Usury.* Mowery filed action on a conditional sales contract signed by House, which showed a total obligation of $2,982.48, itemized as follows:

| | | |
|---|---|---|
| 1. | Price of Motor Truck Purchased | 3,600.00 |
| 2. | Less down payment by trade-in of old truck | 1,200.00 |
| 3. | Balance Due | 2,400.00 |
| 4. | Car Insurance | 180.00 |
| 5. | Credit Life Insurance Personal Accident Insurance and Interest Charges | 402.48 |
| | Total Balance | 2,982.48 |

Mowery alleged that the total amount was to be paid at the rate of $124.27 per month for twenty-four months beginning February 10, 1960; that House made the first payment and defaulted on others; and that the default matured the deferred payments. House, both by pleading and testimony, claimed that he traded in his old motor truck for the new one, and that the total amount he was to pay, *including all interest and carrying charges,* was $2,400.00 to be payable in twenty-four monthly payments.[1] He testified that he traded with Mowery late in the afternoon; that no one was available to type the papers; that he signed them in blank and trusted Mowery to complete them; that when he received the

---

[1] There was a "side note" of $200.00 and a claimed account of $30.30, but it is not necessary for us to detail these items to present the salient issues.

completed contract he made one payment; and then set up the claim of usury.

The fact that House made a payment after receiving the contract would constitute ratification; but would not preclude House from claiming usury, if the original contract was as he testified. The Trial Court was correct in so ruling. Even though the contract was in writing, nevertheless, parol evidence was admissible to show usury. *Heidelberg Southern Sales Co.* v. *Tudor,* 229 Ark. 500, 316 S. W. 2d 716; and cases there cited. If the contract was as House claimed (*i.e.,* $2,400.00 and no interest) then the signed papers were usurious. While House's testimony was rather indefinite at times, nevertheless he was corroborated by his brother to some extent; and we cannot say that there was no sufficient evidence to take the issue of usury to the jury.

II. *The Damage Verdict.* As heretofore stated, when Mowery filed this action he had the motor truck attached and held by the Sheriff under § 34-2301 Ark. Stats. House claimed that since the contract was usurious, the motor truck should not have been taken from his possession, and he sought damages for being deprived of the use of the truck. The jury awarded House $1,200.00 damages; and this is the most serious issue in the case. The correct measure of damages for loss of use of property, in a case such as this, is the rental value or reasonable value of the use of the property. *Arnold Barber Co.* v. *Provance,* 221 Ark. 385, 253 S. W. 2d 367; *Boatwright* v. *Stewart,* 37 Ark. 614; 15 Am. Jur. p. 537, "Damages" § 129; Blashfield on Automobile Law, Permanent edition, § 3419. House offered no testimony as to such measure of damages; rather, he estimated (and most scantily at that) the net profits he would have made if he had not been deprived of the motor truck.[2] There were timely and proper ob-

---

[2] Here are typical excerpts from Mr. House's testimony as to damages:

"Q. What had you been doing with the truck?

A. Hauling logs and lumber and so forth.

jections to House's testimony, and also to submitting to the jury the issue of damages based on such insufficient evidence; and because of the damage issue the judgment must be reversed.

III. *Directions on Remand.* Because of inquiries made by the jurors to the Trial Court, and answers given thereto, we conclude that the issue of damages was so interwoven with the issue of usury that on remand the case should be retried on all issues. Since this is a law case and the judgment is reversed, the cause is remanded for a new trial on all issues. See *Wilson* v. *Davis*, 230 Ark. 1013, 328 S. W. 2d 249.

Reversed and remanded.

---

Q. Did you keep a fairly good account of what you were making per month.

A. I didn't keep exact record on it, no.

Q. Have you since then tried to figure what you were making?

A. Well, in the clear around above expenses I judge I made around $100 a month. . . .

Q. You stated you thought it would make about $100 a month?

A. Right.

Q. Have you ever been in the trucking business before?

A. No, sir.

Q. Have you been in it since?

A. No, I haven't.

Q. You really don't know it would make $100 a month do you?

A. Well, it should make that much.

Q. How much would the expense be on it in a month if you were working in the timber?

A. Some months be greater than others, I wouldn't know exact on that.

Q. I would like to know where you get the figure $100 a month.

A. Well, the $100 a month, I would think would be income from the truck."