TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00601-CV







Michael Hutton, Individually and for the Benefit of Certain Customers


of Michael Hutton Jewelry Design, Appellant



v.



National Guardian Security Services Corp., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 481,245, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING








 Michael Hutton appeals from a summary judgment that he take nothing by his two 
causes of action against National Guardian Security Services Corporation. We will affirm the
trial-court judgment.



THE CONTROVERSY


 Under a contact between them, Greater Austin Security Central, Inc. ("GASC")
installed a security system in Hutton's jewelry-repair shop. (1)
 About two years afterwards, GASC
sold all its assets to National Guardian. (2) Burglars subsequently stole from the shop certain jewelry
that had been left there for repair. Based on allegations that the security system failed, causing
his customers' losses, Hutton sued as their bailee or agent alleging against National Guardian his
customers' causes of action for common-law negligence and their statutory causes of action for
deceptive trade practice. See Deceptive Trade Practices--Consumer Protection Act ("DTPA"),
Tex. Bus. & Com. Code § 1750 (West 1987 & Supp. 1995); Waggoner v. Snody, 85 S.W. 1134,
1135 (Tex. 1905) (bailee may sue third party for damage or destruction of chattel and recover its
full value as bailor's agent).

 On summary judgment, the trial court ordered that Hutton recover nothing by his
causes of action. Hutton appeals on two points of error. The facts are undisputed in all material
respects. We will draw from them all reasonable inferences that favor Hutton's claims. See
Nixon v. Mr. Property Management Co., 690 S.W.2d 545, 548-49 (Tex. 1985).



DTPA CLAIMS


 Under Hutton's first point of error, the parties dispute whether the summary
judgment record shows as a matter of law that Hutton's customers were "consumers." The status
of "consumer" is, of course, essential for a plaintiff to maintain a statutory cause of action for
deceptive-trade practice. See DTPA § 17.50(a). For purposes of the DTPA, a "consumer" means
"an individual . . . who seeks or acquires by purchase or lease, any goods or services." DTPA
§ 17.45(4) (emphasis added). It is not necessary that the plaintiff be a party to the transaction in
which the goods or services were "acquired." Whether the plaintiff "acquired" the goods and
services depends upon the plaintiff's "relationship to a transaction" rather than his or her
relationship with the defendant. See Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 353
(Tex. 1987).

 When the plaintiff is not a party to the contract under which goods or services are
acquired, he is nevertheless a "consumer" for purposes of the DTPA if his relationship to the
transaction is that of an intended beneficiary; that is to say, if the contracting parties intended that
he have the use or benefit of the goods or services acquired under the contract by the purchaser
or lessee. See, e.g., Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361 (Tex. 1987)
(newborn infant "acquired" benefit of medical supplies and services furnished by hospital under
contract with infant's parents); Kennedy v. Sale, 689 S.W.2d 890, 892 (Tex. 1985) (employee
"acquired" benefit of group-insurance policy purchased by employer for his employees); D/FW
Commercial Roofing Co. v. Mehra, 854 S.W.2d 182 (Tex. App.--Dallas 1993, no writ) (tenant
"acquired" benefit of roof-repair services furnished by roofer under contract with landlord when
roof torn from tenant's leased building); Allied Towing Serv. v. Mitchell, 833 S.W.2d 577 (Tex.
App.--Dallas 1992, no writ) (pool-hall patron held to have "acquired" use of automobile-parking
privilege leased from property owner by pool-hall operator for customer parking); HOW Ins. Co.
v. Patriot Fin. Serv., Inc., 786 S.W.2d 533 (Tex. App.--Austin 1990, writ denied) (purchaser of
condominium unit "acquired" benefit of homeowner's warranty and insurance purchased by seller
from developer); Parker v. Carnahan, 732 S.W.2d 151 (Tex. App.--Texarkana, writ denied)
(former wife "acquired" benefit of legal and accounting services purchased by her husband from
accountant and lawyers); see also Wellborn v. Sears, Roebuck & Co., 970 F.2d 1420 (5th Cir.
1992) (teenage son "acquired" use of automatic garage-door opener purchased by his mother from
defendant).

 On the other hand, a stranger to the contract cannot be a "consumer" for purposes
of the DTPA, even though he may be an incidental beneficiary, when the circumstances do not
justify a conclusion that the contracting parties intended that he have the use and benefit of the
goods or services acquired. See Kitchener v. T.C. Trailers, Inc., 715 F. Supp. 798 (S.D. Tex.
1988) (borrower of horse trailer did not "acquire" it in owner's purchase from manufacturer); see,
e.g., Brandon v. American Sterilizer Co., 880 S.W.2d 488, 492 (Tex. App.--Austin 1994, no writ)
(employee using equipment containing toxic chemicals did not "acquire" its use by reason of
employer's purchase of the equipment from manufacturer); Lara v. Lile, 828 S.W.2d 536 (Tex.
App.--Corpus Christi 1992, writ denied) (contractor's employee did not "acquire" transportation
services supplied by subcontractor, even though employee was incidental beneficiary of
subcontractor's implied duty to operate its truck safely); Rodriguez v. Ed Hicks Imports, 767
S.W.2d 187 (Tex. App.--Corpus Christi 1989, no writ) (automobile passenger did not "acquire"
its use or benefit in dealer's sale to driver).

 The transaction of purchase or lease is evidenced by the contract between Hutton
and GASC. It contradicts expressly and directly any imputation that the sale or lease of the
security system was intended for the use or benefit of anyone but the parties. The presumption
is that parties contract for themselves alone. Nothing in the summary judgment record contradicts
that presumption; the contract is consistent with it. We overrule Hutton's first point of error.



NEGLIGENCE CLAIMS


 In a second point of error, Hutton contends the trial court erred in its judgment that
Hutton take nothing by his customers' negligence claims. The parties dispute whether National
Guardian owed Hutton's customers a duty in tort, the prerequisite for a negligence action against
National Guardian, based on Hutton's contact with GASC.

 A negligence cause of action may rest upon an implied duty to perform a contract
duty with reasonable care. See Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508, 510
(Tex. 1947). The Scharrenbeck theory requires a contract duty in the first instance. Here
National Guardian never owed Hutton's customers a contract duty. Hence Hutton may not
recover in their behalf on the ground of negligence. 

See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990); Otis Eng. Corp.
v. Clark, 668 S.W.2d 307, 312 (Tex. 1983).

 For the reasons given, we overrule Hutton's two points of error. We need not,
therefore, determine the two cross-points urged by National Guardian. We affirm the trial-court
judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: March 8, 1995

Do Not Publish

1.   In the contract, GASC promised to install in Hutton's shop certain devices that would
signal the occurrence of unauthorized entries, and to inspect, repair, and adjust these devices
as necessary for their proper operation. GASC retained title to the system. On his part,
Hutton promised to test the system periodically, to ascertain whether it was operational, and
to pay periodically the rental payments specified in the contract. The contract contained as
well the following provisions:


a. GASC would not be liable for consequential or special damages arising out
of the contract;


b. Hutton did not expect GASC "to insure or reimburse [Hutton] or any other
person for losses from [burglaries]" (emphasis added);


c. GASC would not be liable for any loss because of any failure, defect, or damage
regarding the system and should GASC be found liable for any loss owing to
such failure, defect, or damage, because of negligence or some other basis, then
such liability would be limited to $250 or one year's service charge, whichever
is greater;


d. Hutton acknowledged that the sums paid by him under the contract were based
on the charges and the scope of liability specified in the contract, and not upon
the value of Hutton's property or the property of others located in the shop;


e. Hutton had chosen to pay such sums after making an election not to purchase
GASC services with a higher limit of liability for correspondingly higher
charges in specified increments.

2.   National Guardian contends that it is not liable under GASC's contract with Hutton
because it did not assume GASC's liabilities when it purchased GASC's assets. We need not
discuss the issue because we find summary judgment was proper against Hutton on other
grounds.