JACUZZI BROTHERS, INC. *v.* Floyd L. TODD

93-1288                                         875 S.W.2d 67

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.*, for appellant.

*Gary Eubanks & Associates*, by: *James Gerard Schulze*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Jacuzzi Brothers, Incorporated, appeals a judgment of the Saline Circuit Court awarding appellee, Floyd L. Todd, damages of $612,500.00 in a slip and fall case. Appellant asserts three points of error in the jury trial. We find merit in the last point, and we modify on condition of remittitur.

Appellee was employed by Little Rock Sheet Metal when he slipped and fell as he exited appellant's plant on February 20, 1990. Appellee entered appellant's plant to measure for a new sheet metal job. He returned to the same door he had entered and found it closed, so he exited a red door with an "exit" sign above it. He tripped near the bottom of the concrete stairs that were approximately three feet from the door he exited. A chunk of concrete was missing from one of the steps, and appellee caught his foot in the hole created by the missing concrete. As a result of the fall, appellee suffered a back injury requiring two surgeries and the possibility of a third surgery in the future. Pursuant to the jury verdicts, appellee was awarded $600,000.00 in damages and a separate verdict of $12,500.00 for future surgical expenses. Appellant unsuccessfully moved for a new trial, and this appeal followed.

Appellant first contends the trial court erroneously allowed the interjection of evidence concerning a subsequent remedial measure. At the time of appellee's fall, there was an "exit" sign on the door he exited, and subsequent to his fall, the sign was removed. Appellant argues the removal of the "exit" sign constitutes a subsequent remedial measure which is inadmissible as proof of negligence under A.R.E. Rule 407. Appellant contends

this prejudicial error occurred during cross-examination of Mr. Gale Graham, appellant's facilities and environmental engineer:

> Q  Just to be sure. You're not saying there was a sign that said emergency exit only, you're saying you just don't know?
>
> A  Right.
>
> Q  You do know that there was a sign at one point in time that said exit?
>
> A  Probably was, yeah. There's evidence there was a sign on the door, okay.
>
> Q  Since February 20, 1990, there has been a sign that said exit?
>
> A  I didn't see an exit the other day. I didn't see a sign on the door that said exit.

Appellant moved for a mistrial after the last question and answer quoted above. Appellee contends this last question was justified impeachment based upon misleading statements Mr. Graham made characterizing the door as an emergency exit door painted red with panic hardware. Apparently, appellee relies on the impeachment exception to Rule 407. However, reliance on the impeachment exception is misplaced. Appellee could have established what he desired — that the door did have an "exit" sign on it as opposed to an "emergency exit only" sign on the day of appellee's accident, February 20, 1990, and that Mr. Graham stated in his deposition that the door did in fact have an "exit" sign on it — without ever making reference to the status of the door after February 20, 1990.

■■ We agree with appellant that the question relating to the status of the sign on the door after the date of the accident was an improper question for the purpose of proving appellant's negligence at the time of the accident. A.R.E. Rule 407. The trial court correctly instructed appellee not to proceed with any questions regarding the status of the door after February 20, 1990. However, the trial court, who was in a superior position to judge the effect of the erroneous question on the jury, did not see the error as prejudicial and grounds for a mistrial. We cannot say the trial court abused its discretion in this regard.

The trial court had twice previously sustained objections appellant made regarding subsequent remedial measures, and the judge offered to give the jury a cautionary instruction. Appellant did not accept the trial court's offer nor did it request the question and answer be stricken. Appellant contends a mistrial is the only remedy appropriate in this instance and that this is the reason it did not accept the trial court's offer to give the jury a cautionary instruction. We cannot agree that a mistrial was the only appropriate remedy here, given that the trial court had previously sustained appellant's objections on Rule 407 grounds and was very careful to maintain strict control of the evidence in this regard.

■ We also cannot agree that Rule 407 is something akin to a privilege, requiring automatic reversal if violated. While we recognize there is a two-pronged rationale for excluding evidence of subsequent remedial measures — the lack of relevance and the public policy of encouraging such measures — the policy consideration merely strengthens the argument for exclusion, but does not require exclusion. Rule 407 remains part of the article on relevance, not part of the article on privileges. *See* Arkansas Rules of Evidence, Articles IV and V.

■■ A trial court is vested with considerable latitude and discretion when considering a motion for mistrial. *Bull Shoals Community Hosp.* v. *Partee*, 310 Ark. 98, 832 S.W.2d 829 (1992). A mistrial is an extreme remedy to be granted only when it is apparent that justice cannot be served by continuing the trial. *Morton* v. *Wiley*, 271 Ark. 319, 609 S.W.2d 322 (1980); *Rickett* v. *Hayes*, 256 Ark. 893, 511 S.W.2d 187 (1974). Deferring to the trial court's superior position to judge these matters, we cannot say the error committed here was so egregious to prevent a just and fair trial. A mistrial was therefore not warranted, and we cannot say that reversible error occurred.

■ Appellant also contends the trial court erred in denying its motion for new trial made on the same grounds as the motion for mistrial. When the primary issue on a motion for new trial is not a question of liability, we sustain the trial court's denial unless there is a clear and manifest abuse of discretion. *See Fisher Trucking, Inc.* v. *Fleet Lease, Inc.*, 304 Ark. 451, 803 S.W.2d 888 (1991). We have already determined the trial court did not abuse its discretion in this regard.

As its second argument, appellant contends the trial court erred in refusing its proffered jury instructions on the duties owed to a licensee and trespasser. Appellant objected to the giving of AMI 1104, which instructed the jury that appellee was a business invitee to whom appellant owed the duty of ordinary care to maintain its premises in a reasonably safe condition. Appellant argues there was substantial evidence to support the conclusion that appellee was a business invitee who had crossed the boundary of his invitation and become either a licensee or trespasser. *See Daniel Constr. Co.* v. *Holden*, 266 Ark. 43, 585 S.W.2d 6 (1979). Therefore, appellant proffered eight interrogatories along with AMI 1106, which both defined the three classifications of injured persons along with the corresponding duties owed them by the landowner and instructed the jury to determine appellee's classification. Appellant argues the trial court erred in limiting the jury to the instruction on business invitee and should have given the proffered instruction on licensee and trespasser as well.

In its brief, appellant has carefully summarized all the evidence lending support to its argument that appellee went beyond the scope of his invitation. Although the trial court was aware of such evidence, the trial court was not aware of the particular argument appellant makes on appeal. As abstracted, the only basis for appellant's objection to the AMI 1104 business invitee instruction was that the proffered AMI 1106 should be given instead. Appellant did not give a reason why AMI 1104 should not be given, nor did it give a reason why AMI 1106 should be given. Such an objection accomplished nothing as far as informing the trial court of the particular error appellant saw in AMI 1104. We have recently held that a proffered instruction without an accompanying reason for the objection to the instruction given is insufficient to preserve the issue for our review. *Gilliam* v. *Thompson*, 313 Ark. 698, 856 S.W.2d 877 (1993).

We do not intimate that appellant should have summarized all the evidence for the trial court as it did in its brief to this court. However, an objection simply stating that there was evidence indicating Mr. Todd had exceeded the scope of his invitation into the plant and therefore the jury should be allowed to make the determination of fact as to whether Mr. Todd was a business invitee, licensee, or trespasser was required as a bare minimum to apprise the trial court of the particular error of which appel-

lant complains on appeal. Accordingly, appellant has waived this argument on appeal. *Gilliam*, 313 Ark. 698, 856 S.W.2d 877.

As its last point of error, appellant contends the trial court erred in denying its motion in limine requesting the exclusion of Dr. Zachary Mason's testimony regarding the possibility that appellee would require future surgery. Dr. Mason, a neurosurgeon, testified there was a thirty percent chance that appellee would require a future orthopedic surgery. He estimated the cost of such surgery to be $10,000.00 to $15,000.00. Dr. Mason also stated that because of appellee's size, appellee had an increased risk of needing surgery. Dr. Mason testified that while appellee's increased risk was not speculative, whether appellee would require the surgery at all was speculative.

■ Appellant maintains that to be admissible an expert's testimony must be that his opinion represents his professional judgment as to the most likely or probable result and that Dr. Mason's testimony that appellee may require future surgery is speculative and therefore inadmissible. Appellant relies on *Waterfield* v. *Quimby*, 277 Ark. 472, 644 S.W.2d 241 (1982). We agree that a thirty percent chance of requiring a future surgery is not the most likely result and therefore constitutes speculative evidence. The trial court therefore erred in allowing Dr. Mason's testimony in this regard.

■■ Appellant argues this error tainted the entire verdict, and thus a remittitur of the $12,500.00 awarded for future surgical expenses is not warranted. We disagree. Ordinarily, a general verdict is a complete entity which cannot be divided, requiring a new trial upon reversible error; however, when a trial error relates to a separable item of damages, a new trial can sometimes be avoided by the entry of a remittitur. *Wheeler* v. *Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993); *White River Rural Water Dist.* v. *Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992); *Martin* v. *Rieger*, 289 Ark. 292, 711 S.W.2d 776 (1986). In this case, the $12,500.00 for future surgical expenses was awarded as a separate verdict, not part of the $600,000.00 general verdict. We have no hesitation in holding the $12,500.00 is a separable item of damages justifying a remittitur. If appellee remits the $12,500.00 within seventeen days, we will affirm as modified. Otherwise, as a general verdict cannot be divided, we must remand

for a new trial. Moon, 310 Ark. 624, 839 S.W.2d 211; *Martin*, 289 Ark. 292, 711 S.W.2d 776. We misspoke in *Wheeler* when we stated a new trial only on damages would result if the conditional remittitur was not accepted. *See Wheeler*, 312 Ark. at 422, 849 S.W.2d at 958.

The judgment is affirmed as modified on condition of remittitur.

DUDLEY, J., concurs.

GLAZE, J., concurs as to point one expressing his opinion that Todd's evidence reflecting subsequent remedial measures was admissible because it showed the extent Jacuzzi Brothers, Inc. intended to control exiting its building.

HAYS and NEWBERN, JJ., dissent.

STEELE HAYS, Justice, dissenting. This personal injury case was defended throughout on the theory that the plaintiff Todd became a licensee rather than an invitee when he left the Jacuzzi plant by a route he was not authorized to use. Beginning with its answer alleging that the plaintiff had "trespassed into an area of the premises in which he was not authorized to be present," to its answers to interrogatories asserting that Todd had left the area he was authorized to use, to its request for a jury trial asserting the same grounds, to the testimony of witnesses that Todd disregarded yellow lines leading out and used an "emergency" exit he had never previously used, Jacuzzi's position was clear. This is a familiar issue and the law is settled:

> We have said that when one crosses the boundaries of the invitation, he ceases to be an invitee and becomes either a licensee or a trespasser. *Husted* v. *Richards*, 245 Ark. 987, 436 S.W.2d 103. This is in keeping with the general rule recognized by the authorities. It is said that one who enters a building as an invitee for a business purpose is an invitee only while he remains in a portion of the building in which he had a legitimate errand, but if he leaves a place of safety and goes to a place where his business does not require him to be, deliberately placing himself in a position where he is injured by a defective appurtenance, he acquires a less favored status. 62 Am. Jur. 2d 286,

*Premises Liability*, § 47. It is necessary that an employee of a subcontractor, in order to recover as a business invitee of the general contractor, show that, when he was injured, he was using a part of the premises reasonably within the contemplation of the employer's contract or accepted by defendant as being so. Annot., 20 ALR 2d 868, 914.

*Daniel Const. Co.* v. *Holden*, 266 Ark. 43, 585 S.W.2d 6 (1979).

In this case most of the trial testimony and evidence centered on whether Todd was an invitee, express or implied, in the area where his injury occurred and clearly a question of fact on that issue was created by the proof. When the testimony was concluded and instructions were under discussion Jacuzzi objected to AMI 1104, which told the jury categorically that Floyd Todd was an invitee:

In this case Floyd Todd was a business invitee upon the premises of Jacuzzi Brothers, Inc. Jacuzzi Brothers, Inc. owed Floyd Todd a duty to use ordinary care to maintain the premises in a reasonably safe condition.

In lieu of AMI 1104, Jacuzzi asked that AMI 1106 be given, which instructed the jury to decide whether Todd was an invitee or a licensee and explained the duty owed to each.

On appeal, the majority rejects Jacuzzi's contention, not for lack of merit, but because the argument was waived when counsel for Jacuzzi failed to give a reason why AMI 1104 should not be given, and failed to give a reason why AMI 1106 should be given. I submit the appellant preserved the point for review by objecting to AMI 1104, which told the jury that the plaintiff was an invitee as a matter of law, and proffering AMI 1106, which submitted that issue to the jury. The reason for the request could hardly have been clearer and I have no doubt but that the trial judge understood what he was being asked to do. It is, of course, error for an instruction of the trial court to assume a disputed fact which the jury should decide. *Porter* v. *Lincoln*, 282 Ark. 258, 668 S.W. 2d 11 (1989); *Thiel* v. *Dove*, 229 Ark. 601, 317 S.W.2d 121 (1958).

The majority relies on *Gilliam* v. *Thompson*, 313 Ark. 698,

856 S.W.2d 877 (1993). The last paragraph of that opinion ostensibly supports the majority. But if that is what this court meant to say in *Gilliam* then we were wrong and we should make haste to correct the error. This court has *never held* that when a correct jury instruction is proffered, consistent with the proof, it must also be accompanied by a statement as to why it should be given. Notably, *Gilliam* cites no authority for such a rule, because there is none. *Gilliam* refers to *Viking Ins. Co.* v. *Jester*, 310 Ark. 317, 836 S.W.2d 371 ( 1992), but not for that reason. The *Viking* case, in fact, directly refutes *Gilliam*. There we wrote:

> In accordance with [Rule 51], we have said no party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, *and no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue.* [My emphasis.]

That language, of course, is taken verbatim from ARCP Rule 51, which says nothing about a supporting statement when an instruction is refused. A careful reading of Rule 51 leads to the conclusion that the rule has three elements: one) objections to instructions must be made before or at the time an instruction is given; two) an objection to the *giving* of an instruction must be specific; and three) no error may be assigned to the *failure* to instruct on any issue unless the party has submitted a proposed instruction. In this case the appellant objected to the trial court deciding the issue of Todd's status as a matter of law and proffered an AMI instruction which submitted that factual issue to the jury. That is sufficient.

One may search our cases in vain for any decision in which we have held that for error to be preserved for the refusal to give a proper instruction, the proffer must be accompanied by supporting argument. Certainly when one objects to an instruction, a specific reason must be stated. Rule 51 makes that clear. But there is no requirement that when a correct instruction is requested and refused, a statement must be made as to why it should be given. If *Gilliam* is the law, Rule 51 is seriously misleading. Our cases, and there are many, hold uniformly that when one objects

to an erroneous instruction and proffers a correct instruction, the point is preserved for purposes of appeal. In *St. Louis Southwestern Ry Co.* v. *Ellis*, 169 Ark. 682, 276 S.W. 996 (1925), we reversed because the appellant objected properly to the instruction given and "asked for an instruction in the precise language approved by this court." That was sufficient for purposes of appellate review. Where the point is not preserved it is either because the appellant failed to submit a correct instruction or the proof was lacking, but not for want of supporting argument. *See, e.g., Kelly* v. *Medlin*, 309 Ark. 146, 827 S.W.2d 655 (1992); *Burnette* v. *Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990); *City of Little Rock* v. *Weber*, 298 Ark. 382, 767 S.W.2d 529 (1989); *People's Bank and Trust Co.* v. *Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986), *South Arkansas Oil Co.* v. *Livingston*, 250 Ark. 374, 465 S.W.2d 119 (1971); *Johnson* v. *Truck Insurance Exchange*, 285 Ark. 470, 688 S.W.2d 728 (1955); *Trisha* v. *Savage*, 219 Ark. 80, 239 S.W.2d 1018 (1951); *Ozark Packing Co.* v. *Stanley*, 211 Ark. 749, 202 Ark. 352 (1947); *Newman* v. *Peay*, 117 Ark. 579, 176 S.W. 143 (1915); *Boone* v. *Boone*, 114 Ark. 69, 169 S.W. 779 (1914); *Williams* v. *Clark*, 105 Ark. 157, 150 S.W. 568 (1912); *Allison* v. *State*, 74 Ark. 444, 86 S.W. 409 (1905).

We have long held that a party is entitled to have his/her theory presented to the jury and it is error to refuse a proper instruction when there is any evidence tending to support it. *Findley* v. *State*, 307 Ark. 53, 818 S.W.2d 242 (1991) ("even the slightest evidence"); *Dunlap* v. *State*, 303 Ark. 222, 795 S.W.2d 920 (1990) ("slightest evidence"); *Cain* v. *Songer*, 176 Ark. 551, 3 S.W.2d 315 (1928) ("it was error to refuse an instruction presenting plaintiff's theory that the contract was one of sale"); *Life & Casualty Insurance of Tenn.* v. *Gilkey*, 255 Ark. 1060, 505 S.W.2d 200 (1974) ("Since the trial court judge is under a duty to instruct as to the law applicable in the case, it was error not to give the instruction").

The fact is *Gilliam* stands alone among our cases — a radical departure from decades of trial and appellate practice. If that is to be the law, it ought to come only after fair warning and a revision of Rule 51. I respectfully dissent.

NEWBERN, J., joins in this dissent.